UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BEAUTYBANK, INC.,                                        :

               Plaintiff,                    :        10 Civ. 955 (DAB) (GWG)

    -v.-                                             :        REPORT AND
                                                 RECOMMENDATION
                                        :

HARVEY PRINCE LLP, et al.,
                                        :
               Defendants.
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff BeautyBank, Inc. ("BeautyBank"), has filed a motion seeking to hold Kumar

Ramani in contempt for his alleged breach of a permanent injunction entered by this court on

October 12, 2010.  For the following reasons, plaintiff's motion should be denied.

I.      BACKGROUND

      A.     Procedural History

      BeautyBank filed the original complaint in this action on February 8, 2010, against

Harvey Prince LLP ("Harvey Prince"), alleging that Harvey Prince was selling cosmetic

products, including perfume, that violated BeautyBank's "FLIRT" trademark.  BeautyBank

made the following claims: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2)

false designation of origin in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation

of 15 U.S.C. § 1125(c); (4) false advertising in violation of 15 U.S.C. § 1125(a); (5) common

law trademark infringement and unfair competition; (6) deceptive acts and practices in violation

of N.Y. Gen. Bus. § 349; and (7) injury to BeautyBank's public image and business reputation

and/or trademark dilution in violation of N.Y. Gen. Bus. § 360-1(a).  See Complaint, filed Feb.

8, 2010 (Docket # 1).  Plaintiff filed an amended complaint on February 18, 2010, which added

Ramani as a defendant.  See Amended Complaint, filed Feb. 18, 2010 (Docket # 3) ("Am. Compl.").  After Harvey Prince and Ramani failed to respond to the amended complaint, BeautyBank filed a motion for default judgment against both defendants, see Request to Enter Default, filed Apr. 12, 2011 (Docket # 11); Notice of Motion, filed Apr. 28, 2010 (Docket # 13), which Ramani opposed, see Opposition to Plaintiff's Request to Enter Default, filed May 3, 2010 (Docket # 17).

On May 25, 2010, Ramani and BeautyBank entered into a stipulation under which BeautyBank withdrew its motion for a default judgment against Ramani and Ramani agreed to file an answer to the amended complaint by June 4, 2010.  See Stipulation, filed May 25, 2010 (Docket # 21) ("Stipulation") at 2.  The Stipulation recited that it had no effect on the pending motion for a default judgment against Harvey Prince.  Id.  On June 2, 2010, Ramani filed his answer to the amended complaint.  See Answer Affirmation Defenses and Counterclaims, filed June 2, 2010 (Docket # 22) ("Am. Compl. Answer").

The issue of the existence of Harvey Prince was addressed by Ramani as soon as he appeared in this action.  In his answer to the first amended complaint Ramani denied the legal existence of Harvey Prince, making the following statement:

> Due to mistake and complications, [d]efendant avers that Harvey Prince LLP was never formed as a Nevada limited liability partnership but admits his individual name is listed as the controlling partner in certain filings and applications for Harvey Prince LLP at the United States Patent & Trademark Office ("USPTO"). Defendant has subsequently asked his attorney[] for the USPTO filings to amend the erroneous information and believes that the erroneous information has recently been corrected.

Am. Compl. Answer ¶ 4.  Later, when BeautyBank sought a default judgment against Harvey Prince, Ramani repeatedly maintained that Harvey Prince did not exist and opposed the entry of a default judgment against the "non-existent company."  See June 17, 2010 Letter From Ramani

to Hon. Deborah A. Batts (annexed as Ex. E to Declaration Opposing Plaintiff's Motion for a

Contempt Finding, dated June 27, 2011 ("Siegert Decl.")) ("June 17 Letter"); June 30, 2010

Letter From Ramani to Hon. Deborah A. Batts (annexed as Ex. F to Declaration of Ira S. Sacks,

filed May 20, 2011 (Docket # 91) ("Sacks Decl.")) ("June 30 Letter") ("In effect, plaintiff wants

a judgment against a non-existent Nevada partnership that was never formed and plaintiff is fully

aware of this fact."); July 21, 2010 Letter From Ramani to Hon. Deborah A. Batts (annexed as

Ex. G to Sacks Decl.) ("July 21 Letter") ("I am writing in response to [plaintiff's]

letter . . . regarding a proposed default judgment against [Harvey Prince], a company that does

not exist.").  In the letters, Ramani states that when his intellectual property attorney filed the

trademark applications, he included inaccurate information and that he had directed the attorney

"to correct [the] records as necessary."  June 30 Letter; see July 21 Letter; see also March 9,

2011 Letter From Paul W. Siegert to Hon. Deborah A. Batts (annexed as Ex. Q to Sacks Decl.)

("Siegert Letter") at 2 ("[Ramani's] intellectual property lawyer mistakenly signed documents

submitted to the [USPTO] which characterized Mr. Ramani as the principal [of a non-existent

entity].").  In addition, Ramani stated that he had personally "filed a fresh trademark application

for the mark Harvey Prince Eau Flirt in [his] own name," and "corrected the two other

inconsistencies" at the USPTO "so as to cure any discrepancy."  July 21 Letter; see June 30

Letter; see also Siegert Letter at 1 n.1.

   Nonetheless, plaintiff pursued its efforts to obtain a default judgment against Harvey

Prince and ultimately persuaded the court to sign a proposed default judgment drafted by

BeautyBank that included permanent injunctive relief against Harvey Prince.  See Default

Judgment and Permanent Injunction, filed Oct. 12, 2010 (Docket # 31) ("Injunction").  The

Injunction enjoined Harvey Prince, "its officers, directors, principals, servants, employees,

successors and assigns, and all those in active concert or participation with it," from performing

the following acts:

a) imitating, copying or making unauthorized use of the FLIRT Trademarks;

b) manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying the EAU FLIRT perfume or any other products bearing any unauthorized reproduction, counterfeit, copy or colorable imitation of the FLIRT Trademarks, either individually or in conjunction with other words, marks or designs;

c) using any mark confusingly similar to any of the FLIRT Trademarks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product in such manner as to relate or connect, or tend to relate or connect, such product in any way with BeautyBank or to any goods sold, sponsored, approved by, or connected with BeautyBank;

d) engaging in any other activity constituting unfair competition with BeautyBank, or constituting an infringement of any of the FLIRT Trademarks or BeautyBank's rights in, or its rights to use or exploit such trademarks, or the reputation and the goodwill associated with the FLIRT Trademarks;

e) making any statement or representation whatsoever, with respect to the EAU FLIRT perfume that falsely designates BeautyBank as the origin of the goods, or that is false or misleading with respect to BeautyBank; and

f) engaging in any other activity, including the effectuation of assignments or transfers of their interests in marks confusingly similar to the FLIRT Trademarks, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 2(a) through 2(e) above.

Id. at 3-4.  As to the issue of money damages, the matter was referred for an inquest, and

following a Report and Recommendation, see BeautyBank, Inc. v. Harvey Prince LLP, 2011 WL

671749 (S.D.N.Y. Feb. 24, 2011), judgment was entered in favor of BeautyBank against Harvey

Prince in the amount of $51,494.00, see BeautyBank, Inc. v. Harvey Prince LLP, 2011 WL

1483969, at *1 (S.D.N.Y. Apr. 18, 2011).

4

On January 5, 2011, the second amended complaint was filed adding three additional defendants, see Second Amended Complaint, filed Jan. 6, 2011 (Docket # 49). BeautyBank filed the instant motion on May 20, 2011.[1]

    B.       Facts Relevant to the Present Motion

           1.       Evidence Relating to the Existence of Harvey Prince

BeautyBank argues that Ramani is in contempt because he is a principal of Harvey Prince and continues to sell EAU FLIRT perfume, the allegedly infringing product, on his website, www.harveyprince.com. Ramani disputes that he has engaged in acts of infringement but also argues that because Harvey Prince does not exist, he is not subject to the Injunction – inasmuch as he cannot be a principle or agent of a non-existent entity – and thus cannot be held in contempt.

We now discuss the record evidence with respect to whether Harvey Prince exists.

BeautyBank relies most heavily on the fact that numerous applications filed with the USPTO at Ramani's direction indicate that the applicant was Harvey Prince. On May 11, 2009, an application was filed to register the trademark "HARVEY PRINCE EAU FLIRT," which was sworn to by Ramani's attorney, James N. Palik, see Trademark/Service Mark Application, Principal Register (annexed as Ex. G to Sacks Decl.) ("May 2009 Mark App."), a practitioner "with 38 years of intellectual property experience," Sacks Decl. ¶ 25. The application stated that the applicant, Harvey Prince, was a "limited partnership legally organized under the laws of

---

[1] See Notice of Motion, filed May 20, 2011 (Docket # 89); Plaintiff's Memorandum of Law in Support of Motion for Contempt, filed May 20, 2011 (Docket # 90) ("Pl. Memo"); Sacks Decl.; Defendant Kumar Ramani's Memorandum in Opposition to Plaintiff's Motion for a Contempt Finding, filed July 5, 2011 (Docket # 97); Siegert Decl.; Reply Declaration of Ira S. Sacks, filed June 29, 2011 (Docket # 96) ("Sacks Reply Decl.").

Nevada, comprising of Kumar Ramani, having an address of 269 Alfred Avenue, Englewood Cliffs, New Jersey 07632-1326." May 2009 Mark App. at 4-5. On February 10, 2010, in response to an action by the USPTO, Palik again swore that Harvey Prince was a Nevada limited partnership, by amending the description of the applicant to "Harvey Prince LLP, a limited partnership legally organized under the laws of Nevada . . . ." See Response to Office Action (annexed as Ex. H to Sacks Decl.) at 5.

On May 11, 2009, eight other trademark applications were filed listing Harvey Prince as the applicant. Sacks Decl. ¶ 21. "Each of these applications asserted under penalty of perjury that [Harvey Prince] . . . was a Nevada [p]artnership, specifically swearing that 'the Applicant, [Harvey Prince], a limited partnership legally organized under the laws of Nevada, comprising of Kumar Ramani . . . requests registration of the trademark." Id. (citing Trademark Applications (annexed as Ex. J to Sacks Decl.) ("Trademark Apps."). In addition, "[Harvey Prince] (Nevada Partnership)" is listed as the owner of Registered Trademark Number 3,742,010 ("Harvey Prince") and Registered Trademark Number 3,770,283 ("Ageless Fantasy"). See Trademark Registrations for "Harvey Prince" and "Ageless Fantasy" (annexed as Ex. K to Sacks Decl.).

BeautyBank also points to the fact that, in February 2010, it sent a summons and other service materials relating to the instant complaint by overnight delivery to the Nevada Secretary of State ("Secretary of State") "in accordance with the Nevada Rule of Civil Procedure 4(d)(1), for service on Harvey Prince." Sacks Decl. ¶ 4.[2] On March 11, 2010, BeautyBank received a "Service Receipt" from the Secretary of State. Service Receipt (annexed as Ex. B to Sacks

---

[2]  Additionally, pursuant to the Nevada Rule of Civil Procedure, plaintiff mailed copies of the same documents by regular mail to the last-known address of Harvey Prince. Sacks Decl. ¶ 4. The regular mail delivery was not returned. Id.

Decl.).  The Secretary of State's website gives the following explanation regarding the role and

function of the Secretary of State with respect to the receipt of service of process:

> **Please be advised** - If the Secretary of State accepts service of process . . . neither
> the Secretary of State nor his staff makes a determination or any representation
> that the service is proper.  Such determination is left to a court of competent
> jurisdiction. . . .
>
> Please note that the Nevada Secretary of State is a filing agency. . . .  The office
> makes no representation that receipt or other acceptance of service of process by
> this office constitutes valid service of process.

Excerpts from the Website of the Nevada Secretary of State (annexed as Ex. H to Siegert Decl.)

at 1, 3.  Notably, the plaintiff concedes that "the . . . Secretary of State website does not list

Harvey Prince as a limited liability partnership registered in Nevada."  Am. Compl. ¶ 4.

On May 10, 2010, Ramani filed and signed an assignment in which Harvey Prince

purports to assign the Eau Flirt Trademark Application to Ramani.  See Trademark Assignment

(annexed as Ex. I to Sacks Decl.) ("Assignment").  The Assignment provided the following:

> [Harvey Prince], a Nevada limited liability partnership of Kumar Ramani hereby
> assigns to Kumar Ramani individually . . . the trademark EAU FLIRT which it
> has used in interstate commerce and for which it owns Application Serial No.
> 77733393 filed May 11, 2009 in the [USPTO] . . . .

Assignment at 3.[3]

While it would not seem to help BeautyBank on this motion, BeautyBank points out that

Harvey Prince is not the first supposedly non-existent company utilized by Ramani to advertise

and sell EAU FLIRT.  "For example, on [harveyprince.com] at the time this litigation was

---

[3] In January and February 2011, "the Harvey Prince Eau Flirt Trademark Application and the
HARVEY PRINCE and AGELESS FANTASY trademarks were expressly abandoned."  Sacks
Decl. ¶ 23; see also Stipulation of Abandonment of Application (annexed as Ex. D to Siegert
Decl.).

file[d], the website referred not only to [Harvey Prince], but also . . . Harvey Prince Inc., Harvey Prince Companies Inc., and Harvey Prince & Co."  Sacks Decl. ¶ 26.  In addition, as of March 21, 2011, the same website referred to AGELESS FANTASY LLC and Harvey Prince Inc. on the website's "Legal Information" page.  Excerpts From Harveyprince.com, dated March 21, 2011 (annexed as Ex. L to Sacks Decl.) at 4.  Ramani has also made the following statements under oath with respect to the various companies listed on harveyprince.com: (1) Ageless Fantasy, LLC ("Ageless Fantasy") was dissolved in February 2010, Defendant's Amended Responses to BeautyBank's First Set of Interrogatories (annexed as Ex. E to Sacks Decl.) ("Def. Interrog.") at 7; (2) "Harvey Prince Inc. does not exist," Def. Interrog. at 9; (3) "Harvey Prince & Co. Ltd. does not exist," id.; (4) "Harvey Prince Companies Inc. does not exist," id.; and (5) "Harvey Prince & Co. does not exist," id. at 10.  In addition, Ramani states that Ageless Fantasy and Ramani were the only two parties that were responsible for selling Eau Flirt Goods from November 2008 until the dissolution of Ageless Fantasy in February 2010.  Id. at 7.  Ramani concedes that he "has conducted and is responsible for all sales of Harvey Prince Eau Flirt Goods after the dissolution of Ageless Fantasy . . . ."  Id. at 7.

On June 16, 2011, BeautyBank took the deposition of Luisa Kamelhar, the Vice-President of Sales at Arrowpack Inc., "an entity which supplies bottles for . . . Eau Flirt perfume."  Siegert Decl. ¶ 13.  Kamelhar testified that "[s]he was unfamiliar with [Harvey Prince] and testified that Arrowpack Inc. never did any business with that 'entity.'"  Id.  Instead, since 2009, Kamelhar dealt with Ramani or his wife directly.  Id.  Ramani, and not Harvey Prince, was Arrowpack Inc.'s client.  Id.

2.      Ramani's Alleged Contempt

EAU FLIRT Goods continue to be available for purchase on harveyprince.com, see

Copies of the Harveyprince.com Products Page (annexed as Ex. O to Sacks Decl.), and are being

sold with a notation indicating that EAU FLIRT is a registered trademark, see Copy of Page

from Harveyprince.com (annexed as Ex. A to Sacks Reply Decl.).  Furthermore, Ramani has

admitted that he is "responsible [for the] (a) design, (b) development, (c) marketing, (d)

manufacturing, (e) advertising, and/or (f) shipping of Harvey Prince Eau Flirt Goods since

November 2008."  Def. Interrog. at 8.

As discussed above, the Injunction prohibited Harvey Prince and its "officers, directors,

principals, servants, employees, successors and assigns" from engaging in various acts of

infringement.  Injunction at 3-4.  Accordingly, plaintiff contends that if Harvey Prince exists and

Ramani is its officer or principle, his conduct "plainly violat[ed] the express terms of the

prohibitions of the [I]njunction."  Sacks Decl. ¶ 39.

II.      LAW GOVERNING CONTEMPT MOTIONS

Federal courts have inherent authority to hold a party in civil contempt for violation of a

court order.  See Chao v. Gotham Registry, Inc., 514 F.3d 280, 291 (2d Cir. 2008).  "To establish

contempt, 'a movant must establish that (1) the order the contemnor failed to comply with is

clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the

contemnor has not diligently attempted to comply in a reasonable manner.'"  Perez v. Danbury

Hosp., 347 F.3d 419, 423 (2d Cir. 2003) (citation omitted); accord Chao, 514 F.3d at 291.  The

movant bears the burden of proving contempt by "clear and convincing" evidence.  See City of

New York v. Local 28, Sheet Metal Workers' Int'l Ass'n, 170 F.3d 279, 282 (2d Cir. 1999);

accord E.E.O.C., 2011 WL 1219261, at *7.  "In the context of civil contempt, the clear and

9

convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted); accord Lesser v. U.S. Bank Nat'l Ass'n, 2011 WL 1004708, at *10 (E.D.N.Y. Mar. 18, 2011); City of New York v. Golden Feather Smoke Shop, Inc., 2010 WL 2653369, at *5 (E.D.N.Y. June 25, 2010).

III.    DISCUSSION

    A.    The Existence of Harvey Prince

As discussed above, the Injunction in question is not against Ramani personally but rather enjoins only Harvey Prince, "its officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with it," from performing the prohibited acts.  Thus, to prove Ramani's noncompliance with the Injunction, BeautyBank must establish, through clear and convincing evidence, that Ramani served Harvey Prince in one of the listed capacities.  In order to make this showing, plaintiff must at a minimum show that Harvey Prince exists.  BeautyBank has failed to meet its burden, however, because it has not established that Harvey Prince ever existed.

While plaintiff has submitted various filings made by Ramani to the USPTO attesting to the existence of Harvey Prince, this evidence does not "demonstrate to a reasonable certainty" that Harvey Prince exists.  To the contrary, at most this evidence shows that Ramani, either personally or through counsel, repeatedly represented to the USPTO under oath that Harvey Prince existed.  It is entirely possible, however, that these statements were false or inaccurate, as Ramani now attests.  Moreover, most of the USPTO filings submitted as evidence by BeautyBank do not even support its claim that Harvey Prince is a limited liability partnership ("LLP").  Instead, the majority of filings state that Harvey Prince is a Nevada "limited

partnership," see May 2009 Mark App. at 2, 4; Trademark Apps., a different entity under Nevada law, compare Nev. Rev. Stat.. §§ 87.440 to .540 (registered limited-liability partnerships), with Nev. Rev. Stat. §§ 87A.005 to .700, and Nev. Rev. Stat. §§ 88.010 to .650 (limited partnerships). Only the Assignment describes Harvey Prince as a LLP.  See Assignment at 3.

Importantly, the mere fact that a party states on a document, sworn under penalty of perjury, that an entity is an LLP in the state of Nevada does not result in the creation of an LLP within that state.  Under Nevada law, a partnership is formed when "two or more persons [associate] to carry on as co-owners of a business for profit."  Nev. Rev. Stat. §§ 87.060, 87.4322.  BeautyBank has presented no evidence that would allow a finding that Ramani associated with another person to form a partnership, let alone that he organized and formed an LLP.  In fact, the evidence submitted by BeautyBank, if anything, establishes that the only person that had anything to do with Harvey Prince was Ramani – a fact plaintiff recognizes.  See Pl. Memo at 14 ("on May 10, 2010, Harvey Prince by its sole partner, Kumar Ramani . . . . Moreover, on May 11, 2009, Harvey Prince, by its sole partner Ramani . . ."); Sacks Reply Decl. ¶¶ 9, 11.

Nor does the Service Receipt from the Nevada Secretary of State constitute clear and convincing evidence of Harvey Prince's existence.  While BeautyBank contends that this document is evidence of the fact that Harvey Prince exists, Sacks Reply Decl. ¶¶ 17-18, the face of the document itself indicates that it is nothing more than a standard form that is completed by the Secretary of State's office to confirm receipt of a service package from a party.  See Service Receipt.  Though the form indicates that the "[e]ntity [b]eing [s]erved" is Harvey Prince, id., this phrase does not speak to the existence of Harvey Prince.  Instead, it appears to merely indicate the place to which the Secretary of State's office was directed by plaintiff to forward the

11

package.  Furthermore, other than plaintiff's conclusory allegations that the form evidences the existence of Harvey Prince, BeautyBank has failed to provide any additional evidence that corroborates their contention.  Nowhere in their submission has BeautyBank attached an affidavit or declaration from anyone with personal knowledge attesting to the purpose of the Service Receipt or explaining the phrases contained therein.  Accordingly, there is no reason for the Court to believe that the Service Receipt is anything other than what it purports to be: a form confirming receipt of a service package from plaintiff.

In sum, BeautyBank has supplied insufficient evidence to support a finding that Harvey Prince exists as a legal entity.

     B.    <u>Judicial Estoppel</u>

Plaintiff argues that "even if evidence of Harvey Prince's existence [is] not overwhelming," Ramani nonetheless should be found in contempt because he is judicially estopped from denying the existence of Harvey Prince and that he was its principal.  Pl. Memo at 15; Sacks Reply Decl. ¶ 29.

"The equitable doctrine of judicial estoppel provides that, '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" <u>Uzdavines v. Weeks</u>, 418 F.3d 138, 147 (2d Cir. 2005) (alteration in original) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001)).  The Supreme Court has identified various factors, that "typically inform the decision whether to apply the doctrine in a particular case":

> First, a party's later position must be "clearly inconsistent" with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial

> acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled" . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750-51 (citations omitted); accord DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010); Uzdavines, 418 F.3d at 147. The factors emphasized by the Court are not, however, "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." New Hampshire, 532 U.S. at 750-51.

The Second Circuit has limited the doctrine to only those situations where "the risk of inconsistent results with its impact on judicial integrity is certain." Uzdavines, 418 F.3d at 148. The inconsistent statements are to be viewed in the context in which they are made, DeRosa, 595 F.3d at 103, and the doctrine is only to be applied in "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced," Uzdavines, 418 F.3d at 148 (citations and internal quotation marks omitted). "Judicial estoppel applies to sworn statements made to administrative agencies such as the Social Security Administration as well as to courts." DeRosa, 595 F.3d at 103; see Yeda Research & Dev. Co. v. Imclone Sys. Inc., 443 F. Supp. 2d 570, 624 (S.D.N.Y. 2006) (applying judicial estoppel doctrine to sworn statements made to the USPTO).

Here, neither party contests the fact that Ramani's statements to the USPTO were adopted by the agency and are inconsistent with his current position. Thus, we need not address these factors. Nonetheless, judicial estoppel should not be applied here because BeautyBank has failed to show that it would suffer unfair detriment or that Ramani would be unfairly advantaged if the Court were to refrain from applying the doctrine. BeautyBank was not a party to the

13

USPTO proceeding and thus never "acquiesced in the position formerly taken by" Ramani. Uzdavines, 418 F.3d at 147. The trademark applications would have presumably been granted to any person or entity that submitted them, including Ramani himself. BeautyBank alleges it has suffered prejudice in that it was forced to incur "time, effort, and cost[s] . . . in order to serve Harvey Prince, make a motion for default judgment, and pursue Ramani to withdraw all of the pending trademarks . . . ." Sacks Reply Decl. ¶ 32. But these actions are relatively minor litigation costs compared to the cost of proving Ramani's infringement. The cost of proving the infringement would have to have been incurred by BeautyBank regardless of whether Ramani made misrepresentations about Harvey Prince's existence to the USPTO. Moreover, Ramani made clear to this Court from the beginning that Harvey Prince did not exist and opposed entry of the Injunction precisely on this ground. Thus, BeautyBank's efforts to obtain a default judgment against Harvey Prince were avoidable inasmuch as Ramani had conceded in his Answer that Harvey Prince did not exist.

Moreover, if the Court were to find that Ramani was estopped from denying Harvey Prince's existence, it would essentially be punishing Ramani for lying to the trademark office by imposing contempt sanctions on him for infringement. This would not serve to protect the integrity of the judicial system. See In re Adelphia Recovery Trust, 634 F.3d 678, 696 (2d Cir. 2011) ("purpose of judicial estoppel is not to look for, or punish, outright lies, but 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment'") (quoting New Hampshire, 532 U.S. at 749-50). While it is true that Ramani made false statements to the USPTO, these acts did not cause him to derive an unfair advantage or cause BeautyBank to suffer an unfair detriment. This is not a scenario where Ramani changed his position in order to gain an advantage in the litigation or to

14

avoid liability.  Ramani's conduct has not prevented BeautyBank from suing him personally and does not prevent BeautyBank from obtaining a judgment against him in the future and collecting on that judgment.  Accordingly, judicial estoppel should not be applied to enforce the Injunction against Ramani.  See generally Uzdavines, 418 F.3d at 148 (court declines to apply judicial estoppel where there was no unfair detriment imposed on movant and non-movant was not unfairly advantanged); DeRosa, 595 F.3d at 105 (court declines to apply doctrine where plaintiff's conduct did not cause "any discernible prejudice" to defendant and was not an "affront to the integrity of the district court").

*          *          *

In sum, plaintiff has failed to establish, either with actual evidence or through judicial estoppel, that Harvey Prince exists.  As a result, Ramani cannot be subject to the prohibitions of the Injunction.  Accordingly, BeautyBank's motion for contempt fails.

IV.     CONCLUSION

For the foregoing reasons, the motion for contempt (Docket # 89) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Batts.  If a party fails to file timely objections, that party will not be permitted

15

to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474

U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 16, 2011
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

16